IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CSX TRANSPORTATION, INC.,        *

    Plaintiff,                  *

vs.                              *
                              CASE NO. 3:06-CV-098 (CDL)
                              *
WILLIAM DEAN BOWMAN; and
PYRAMID STONE INDUSTRIES, INC.,  *

    Defendants.                 *

                              *

O R D E R

This action arises from a train derailment in Elberton, Georgia on November 24, 2005. Plaintiff CSX Transportation, Inc. ("CSX") sued Defendants William Dean Bowman and his employer, Pyramid Stone Industries, Inc. ("Pyramid Stone"), asserting claims for negligence, respondeat superior liability, and punitive damages. Presently pending before the Court is Pyramid Stone Industries, Inc.'s Motion for Summary Judgment (Doc. 38). For the following reasons, this motion is granted.

FACTUAL BACKGROUND

Viewing the facts in the light most favorable to CSX, the record supports the following:

The facts of this case are largely undisputed. On the afternoon of November 24, 2005, Thanksgiving day, the engineer of a northbound CSX train observed a "kink" in the tracks as he approached a rural

railroad crossing in Elberton, Georgia.[1]  (Ex. H to CSX Transp., Inc.'s Mem. in Opp'n to Pyramid Stone Indus., Inc.'s Mot. for Summ. J., Boyd Dep. 14:16-22, June 18, 2007.)  The engineer was unable to stop the train in time to avoid the damaged tracks.  As a result, three locomotives and four cars derailed.  Although none of the individuals aboard the train suffered any personal injuries, the property damage to Plaintiff's tracks and equipment exceeded $730,000.00.

Defendant Pyramid Stone Industries, Inc. ("Pyramid Stone"), a granite quarrying business, is owned and operated by James Michael Rutherford ("Rutherford").  The Pyramid Stone quarry is located off Pyramid Road, a short distance from the railroad crossing where the CSX train derailed.  Rutherford also owns three trailer homes located on property directly across the street from the quarry, one of which he rents to Defendant William Dean Bowman, a Pyramid Stone employee. The close proximity of Bowman's residence to the quarry gate allowed Bowman to "keep an eye out on the quarry at times when it's not open[.]"  (Bowman Dep. 98:17-19, May 2, 2007.)  Rutherford feels reassured "knowing that someone with visualization around the clock . . . would let [him] know if something was going on."  (Rutherford Dep. 88:17-19.)  Rutherford regards this "relationship" with Bowman

---

[1]CSX had officially closed this crossing in September 2005 by removing the asphalt and roadway approaches leading up to the tracks. (Ex. I to CSX Transp., Inc.'s Mem. in Opp'n to Pyramid Stone Indus., Inc.'s Mot. for Summ. J., Williams Dep. 53:4-18, Sept. 13, 2007.)

as reciprocal, one in which Bowman "look[s] after[Rutherford's] investment and his [own] job future[.]" (*Id.* at 88:11-12.)

Pyramid Stone initially hired Bowman as a ledge hand in November 2003.[2] By November 2005, however, Bowman's duties included running drills, operating and maintaining quarry equipment, and "doing basically anything [Rutherford] needed [him] to do." (Bowman Dep. 77:16-17.) The quarry generally operates from 7:00 a.m. until 3:00 p.m.; however, the nature of Bowman's duties often require him to work overtime when the quarry is closed. On the days that Bowman works after hours, he frequently gets permission to drive himself home in a Pyramid Stone golf cart.[3] (Rutherford Dep. 90:25-91:13, 99:23-100:14, May 3, 2007.) As with most of the quarry equipment, the keys to the golf cart were usually kept with the cart itself, so that quarry employees would have easy access to the cart during the work day. (Bowman Dep. 111:19-23, 117:6-8; Dorsey Dep. 22:1-9, Nov. 7, 2007.)

---

[2]Bowman's brother also works at the quarry, and in 2003 he informed Rutherford that Bowman had been recently released from prison and was looking for a job. In fact, Bowman had "been in [and out of] jail half [his] life." (Bowman Dep. 178:15.) Rutherford testified that he does not "routinely" ask prospective employees about their criminal histories because "[he] would not base [his] hiring on that record." (Rutherford Dep. 51:15, 52:14.) He also stated that, in the quarry business, "if [he] did not hire a person that had been in jail or . . . that had a negative background, then [he] would not have very many employees." (*Id.* at 52:19-23.) Rutherford does call "the sheriff's department [to] see if there are any outstanding warrants" and checks to ensure that any driver's license is current and valid. (*Id.* at 49:16-18, 50:1.)

[3]Bowman does not own a car and does not have a valid driver's license. (Bowman Dep. 44:23-25.)

3

The Pyramid Stone quarry was closed on Thanksgiving day 2005. Thus, when Bowman noticed that the main gate was open, he called Rutherford and went over to the quarry. Before securing the gate, Bowman drove the golf cart "through the quarry property to make sure no one[] [was] on the quarry property, that [he was] not locking anybody in or anybody's come in that's not supposed to be there." (Bowman Dep. 132:1-3.) "[B]ecause [he] was going to [go] into work the next day[,]" Bowman drove the golf cart back to his trailer after closing the quarry gate. (*Id.* at 132:6.)

Shortly after Bowman arrived home, deer hunters stopped by and offered him a deer they had left at their hunting camp. Bowman decided to "just take the golf cart, ride over there and pick up the deer[.]" (Bowman Dep. 132:17-18.) Although he drove up the highway to retrieve the deer, Bowman decided to return down the other side of Pyramid Road and across the railroad tracks. Before he reached the railroad crossing, Bowman ran the golf cart into a ditch.

Instead of informing Rutherford about what had happened, Bowman decided that he "could just go over [to the quarry] and get the front-end loader and take it down [to the ditch] and load [the golf cart] up [him]self and not bother anybody and bring it back up to the quarry." (Bowman Dep. 133:10-13.) Bowman drove the front-end loader off quarry property, down Pyramid Road, and across the railroad tracks. Once he recovered the golf cart, he drove the front-end loader back across the tracks and back to the quarry. Bowman watched

4

as he drove the front-end loader across the railroad tracks and "didn't notice any damage." (*Id.* at 133:19.) "When [he] got back to the quarry, [he] dropped the golf cart off, took the loader back around and parked it up on the other end where it wouldn't be seen, [where] nobody could bother it." (*Id.* at 133:22-25.) Shortly thereafter, the CSX train derailed.

CSX filed this action on November 20, 2006, claiming that Bowman damaged the tracks using the Pyramid Stone front-end loader. CSX seeks both compensatory and punitive damages. CSX asserts claims against Bowman for negligence and negligence *per se*. CSX bases its claims against Pyramid Stone upon the theories of respondeat superior liability; negligent hiring, retention, training, and supervision; and negligent entrustment. Pyramid Stone seeks summary judgment on each of Plaintiff's claims against it.

DISCUSSION

**I. Summary Judgment Standard**

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A central purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Here, Pyramid Stone has the burden to show that there is no genuine issue of material fact. *See id.* at 323. To meet this burden, Pyramid Stone may point the Court to "affirmative evidence demonstrating that [CSX] will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks and citations omitted). In the alternative, Pyramid Stone may show "that there is an absence of evidence to support [CSX's] case." *Celotex Corp.*, 477 U.S. at 325. This is because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Pyramid Stone is not required to come forth with evidence negating CSX's claims. *See id.*

Once Pyramid Stone meets its burden, the burden shifts to CSX to produce evidence showing that there *is* a genuine issue of material fact. *See id.* at 324. CSX "must go beyond the pleadings," *id.,* and point to "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord Celotex Corp.*, 477 U.S. at 324. CSX is not required to produce evidence in a form that would be admissible at trial, but it must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.;* Fed. R. Civ. P. 56(e).

Pyramid Stone is entitled to summary judgment if, after construing the evidence in the light most favorable to CSX and

drawing all justifiable inferences in its favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for CSX—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

Pyramid Stone contends both that the affirmative evidence establishes that it is entitled to summary judgment and that CSX failed to present sufficient evidence to create any genuine issues of material fact.

**II. Negligence Claims**

    A.    <u>Respondeat Superior Liability</u>

Pyramid Stone argues that it is entitled to summary judgment on Plaintiff's respondeat superior claim because Bowman was not acting within the scope of his employment at the time he allegedly caused damage to the CSX tracks. In Georgia, "[e]very person shall be liable for torts committed by his . . . servant by his command or in the prosecution and within the scope of his business[.]" O.C.G.A. § 51-2-2. "'Two elements must be present to render a master liable

7

[under respondeat superior]: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business.'" *Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612, 613, 580 S.E.2d 215, 217 (2003) (citation omitted) (alteration in original). "If a tort is committed by an employee not by reason of the employment, but because of matters disconnected therewith, the employer is not liable." *Id.* (internal quotation marks and citations omitted). Furthermore, "[i]f a tortious act is committed not in furtherance of the employer's business, but rather for *purely personal reasons* disconnected from the authorized business of the master, the master [is] not . . . liable." *Id.* at 613-14, 580 S.E.2d at 217 (internal quotation marks and citations omitted) (second alteration and omission in original).

Thus, "[u]nder Georgia law, 'if a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, the servant may be liable, but the master is not liable.'" *Id.* at 614, 580 S.E.2d at 217 (quoting *Brownlee v. Winn-Dixie Atlanta,* 240 Ga. App. 368, 369, 523 S.E.2d 596, 598 (1999)). In other words, "[w]here the tort of the employee is wholly personal to himself, it is not within the scope of his employment, and the [employer] is not liable." *Smith v. Myrick,* 205 Ga. App. 339, 340, 422 S.E.2d 236, 238 (1992). In such cases,

> [t]he test is the nature of the tortious act and its relation or nonrelation to that which the actor was employed to do. . . . The purpose of the employee's act,

8

> rather than the method of performance thereof, is said to be the important consideration. Liability on the part of the employer is not limited to the employee's acts which promote the objects of the employment, the general idea being that in order to fix liability on the employer, the employee at the time of doing the wrongful act must have been acting in behalf of the employer, and not on his own account.

*Am. Oil Co. v. McCluskey,* 119 Ga. App. 475, 478, 167 S.E.2d 711, 714 (1969) (internal quotation marks and citation omitted).

For purposes of the pending motion for summary judgment, the Court assumes that Bowman was acting within the scope of his employment when he checked the quarry property and closed the quarry gate on Thanksgiving morning. While Bowman may have been within the scope of his employment when he checked the quarry property, he clearly "step[ped] aside from his master's business" when he took the Pyramid Stone golf cart to recover a deer and then drove the cart into a ditch. *Smith*, 205 Ga. App. at 340, 422 S.E.2d at 238. The issue presented here is whether Bowman "stepped back into his master's business" when he took the Pyramid Stone front-end loader to retrieve the golf cart and, in the process, allegedly caused the damage to Plaintiff's property.

It is undisputed, for purposes of this motion, that Bowman caused the damage to Plaintiff's property by operating a front-end loader owned by his employer, Pyramid Stone. Therefore, under Georgia law, "a presumption arises that [Bowman] was in the scope of his employment at the time of the [injury], and the burden is . . . on [Pyramid Stone] to show otherwise." *Remediation Res., Inc. v.*

9

*Balding*, 281 Ga. App. 31, 32, 635 S.E.2d 332, 334 (2006) (internal quotation marks and citation omitted). Pyramid Stone seeks to rebut this presumption by presenting uncontradicted testimony from both Bowman and Rutherford that at the time of the alleged incident, Bowman was acting on a personal mission for himself and was outside the scope of his employment. First, Bowman explicitly acknowledged that his "use or operation of the front loader on Thanksgiving 2005 was not for any purpose or benefit or furthering of business on behalf on Pyramid Stone[.]" (Bowman Dep. 199:15-19.) Rutherford likewise stated that Bowman was not "doing anything in furtherance of the business of Pyramid Stone on Thanksgiving 2005 while operating the front loader[.]" (Rutherford Dep. 170:13-15 & 18.) Rutherford further testified that he "would rather [Bowman had] left the golf cart where it was" because "[i]f it had been left there and brought to [his] attention the next day, [Rutherford] could have retrieved the golf cart properly." (Rutherford Dep. 159:7-8 & 10-13.)

CSX contends that summary judgment is not appropriate because other evidence exists from which a reasonable jury could conclude that Bowman was acting within the scope of his employment for Pyramid Stone at the time he allegedly damaged the tracks. Viewing the evidence in the light most favorable to CSX, the following circumstantial evidence is relevant to the respondeat superior claim: (1) Bowman and Rutherford had a "relationship" through which Bowman "look[ed] after [Rutherford's] investment"; (2) payroll records

10

indicate that Bowman received overtime pay for the week in 2005 that included Thanksgiving day; (3) Bowman returned both items of equipment, the golf cart and the front-end loader, to quarry property; and (4) Rutherford admitted that "[i]f the golf cart had been left at the crossing overnight, [he would] have had [some] concern that it might have been vandalized [or stolen.]" (Rutherford Dep. 88:6 & 11-12, 158:16-17, 161:9-11 & 14 & 17.) According to CSX, a jury could infer from these facts that Bowman took the front-end loader to recover the golf cart "in connection with [Pyramid Stone]'s business and for the purpose of promoting [Pyramid Stone]'s interest." *Am. Oil Co.*, 119 Ga. App. at 477, 167 S.E.2d at 713.

"For an inference to be sufficient to create a genuine issue of fact precluding summary judgment, it must be reasonable and must amount to more than mere speculation, conjecture, or possibility." *Kmart Corp. v. McCollum*, ___ S.E.2d ___, No. A07A1663, 2008 WL 787257, at *4 (Ga. Ct. App. Mar. 26, 2008) (internal quotation marks and citation omitted). Here, it is not reasonable to infer that Bowman engaged in Pyramid Stone's business simply by returning his employer's equipment after using it to engage in some private and personal matter of his own. Pyramid Stone may have received an incidental benefit from Bowman's use of the front-end loader to retrieve the golf cart and secure it from the ditch; however, Bowman's recovery of the cart was inextricably intertwined with his personal mission to stock his freezer with venison. The record

11

demonstrates that Bowman drove the front-end loader to retrieve the golf cart in order to avoid the ramifications of it being discovered that he had taken his employer's property on an unauthorized, personal mission that was completely disconnected from his employment. In short, at the time of the cart recovery, Bowman was not acting on behalf of his employer, but on his own account. Accordingly, Pyramid Stone is entitled to summary judgment on Plaintiff's respondeat superior claim.[4]

B. <u>Negligent Hiring, Supervision, Training & Retention</u>

Pyramid Stone next asserts that it is entitled to summary judgment on the claims for negligent hiring, supervision, training, and retention. "The appropriate standard of care in a negligent hiring/retention action is whether the employer knew *or should have known* the employee was not suited for the particular employment." *W. Indus., Inc. v. Poole*, 280 Ga. App. 378, 381-82, 634 S.E.2d 118, 121 (2006) (internal quotation marks omitted); *accord Remediation Res.*, 281 Ga. App. at 34, 635 S.E.2d at 335 (using same standard of care

---

[4]This case is distinguishable from those in which an employee temporarily departs from serving his employer, then commits a tort after he resumes the discharge of duties that are within the scope of his employment. *See generally*, *e.g.*, *Atlanta Laundries, Inc. v. Goldberg,* 71 Ga. App. 130, 30 S.E.2d 349 (1944); *Atlanta Furniture Co. v. Walker,* 51 Ga. App. 781, 181 S.E. 498 (1935). In these cases, the employer is liable *despite* the employee's "frolic" because the tort occurs *after* the employee has (1) accomplished the object of his departure and (2) resumed the discharge of his duties to the employer. In this case, however, Bowman had not completed his personal mission at the time he allegedly caused the damage to CSX. Instead, while still within the scope of his personal mission, Bowman used the front-end loader in an attempt to secure the golf cart so that his actions would not be discovered.

12

for negligent training and supervision claims). In addition, "'[t]he causation element requires showing that, given the employee's . . . propensities, the victim's injuries should have been foreseen as the natural and probable consequence of hiring [or retaining] the employee.'" *Underberg v. S. Alarm, Inc.*, 284 Ga. App. 108, 113, 643 S.E.2d 374, 378-79 (2007) (quoting *TGM Ashley Lakes, Inc. v. Jennings*, 264 Ga. App. 456, 459, 590 S.E.2d 807, 813 (2003)). However, "liability does not attach if the employee committed the tort in a setting or under circumstances wholly unrelated to his employment." *TGM Ashley Lakes*, 264 Ga. App. at 459, 590 S.E.2d at 813.

CSX argues that genuine issues of fact exist as to each of the essential elements of negligent hiring, training, supervision, and retention. First, CSX contends that a jury may conclude that Pyramid Stone breached its duty "to exercise ordinary care in the selection of [Bowman] and not to retain [him] after knowledge of incompetency." O.C.G.A. § 34-7-20. CSX specifically claims that "Pyramid Stone had actual knowledge of at least some of Bowman's criminal history" and thus should have known that he was not suited for a position allowing for widespread access to quarry equipment. (CSX Transp., Inc.'s Mem. in Opp'n to Pyramid Stone Indus., Inc.'s Mot. for Summ. J. 17 [hereinafter CSX Opp'n Mem.].) CSX also asserts that a reasonable jury could conclude that Bowman's tortious actions were not "wholly unrelated" to his employment with Pyramid Stone. Finally, CSX argues

13

that there is a jury question as to whether Pyramid Stone negligently caused the damage to CSX because such damage "should have been foreseen as the natural and probable consequence" of Bowman's employment. *Underberg*, 284 Ga. App. at 113, 643 S.E.2d at 378-79.

The Court will assume, without deciding, that Bowman's negligent operation of the Pyramid Stone equipment was not "wholly unrelated" to his employment.[5] Nonetheless, Pyramid Stone is entitled to summary judgment because there is no evidence from which a reasonable jury could conclude (1) that Pyramid Stone "*should have known* [Bowman] was not suited for [his] particular employment" or (2) that Pyramid Stone caused the injury to CSX by failing to foresee such injury "as the natural and probable consequence of hiring" or retaining Bowman. *Poole*, 280 Ga. App. at 381-82, 634 S.E.2d at 121; *Underberg*, 284 Ga. App. at 113, 643 S.E.2d at 378-79.

First, in order to show that Pyramid Stone breached the standard of care in hiring and retaining Bowman, CSX must demonstrate that Pyramid Stone knew or should have known that Bowman was not suited for his employment at the rock quarry. However, "[u]nsuitability is . . . properly determined with reference to the particular position involved[,]" and there is nothing in the record demonstrating that Bowman is not suited for employment at a rock quarry. *Munroe v.*

---

[5]While the Court is not convinced that Bowman's alleged tortious conduct relates to his employment at all, it is not necessary to decide this issue in determining whether Pyramid Stone is entitled to summary judgment on this particular claim.

14

*Universal Health Servs., Inc.*, 277 Ga. 861, 862 n.2, 596 S.E.2d 604, 606 n.2 (2004). Rutherford testified that Bowman is "an excellent worker" who has "proved himself to be a capable worker and . . . capable of following directions." (Rutherford Dep. 86:20, 102:11-12.) Although Bowman does not have a driver's license, "[y]ou don't need a driver's license to operate excavating equipment." (*Id.* at 72:16-17.) Furthermore, since Bowman had experience working with "heavy equipment, excavators, road graders, and construction equipment," there is no evidence to suggest that Pyramid Stone should not have permitted Bowman to use such equipment as part of his employment. (*Id.* at 55:20-22.) In short, CSX failed to present any evidence from which a reasonable jury could conclude that Bowman "was not suited for [his] particular employment" at the Pyramid Stone quarry, much less that Pyramid Stone knew or should have known of Bowman's alleged incompetence. *Poole*, 280 Ga. App. at 382, 634 S.E.2d at 121.

Even assuming, however, that Pyramid Stone breached the standard of care by hiring and retaining Bowman without inquiring into his criminal history, CSX still cannot survive summary judgment because there is no evidence that such breach caused the injury to CSX. Although the issue of causation is ordinarily reserved for the jury, a court may decide "plain, palpable and undisputable cases" as a matter of law. *Underberg*, 284 Ga. App. at 113, 643 S.E.2d at 379; *accord La Quinta Inns, Inc. v. Leech*, ___ S.E.2d ___, Nos. A07A2432

15

& A07A2433, 2008 WL 204589, at *3 (Ga. Ct. App. Jan. 25, 2008); "In such plain cases, the inquiry is whether the causal connection between the defendant's conduct and the injury is too remote for the law to countenance a recovery." *Leech*, 2008 WL 204589, at *3.

CSX claims that Pyramid Stone breached the standard of care by failing to restrict Bowman's access to quarry equipment despite his "long history of disobeying explicit instructions, burglary, theft, property damage, and attempts to evade responsibility[.]" (CSX Opp'n Mem. 16; *see also* Ex. 14 to Rutherford Dep.) CSX argues that since Pyramid Stone had "actual knowledge of at least some of Bowman's criminal history," a reasonable jury could conclude that Pyramid Stone should have foreseen that "*some* injury might result from Bowman's misdeeds." (CSX Opp'n Mem. 17, 18.) This causal connection, to the extent it exists, is simply "too remote for the law to countenance a recovery." *Leech*, 2008 WL 204589, at *3. Even if Pyramid Stone hired Bowman with full and complete knowledge of his criminal history, there is nothing about his background that would permit a jury to find that the injury to CSX was foreseeable. Although CSX places great significance on the fact that Bowman caused the damages at issue while using his employer's equipment without permission, it is undisputed that he damaged the railroad tracks in the course of returning that equipment to Pyramid Stone property. There is no evidence that the damage was intentionally inflicted or that it was caused during the commission of a crime. Quite simply,

16

there is no evidence demonstrating that Pyramid Stone should have foreseen CSX's injury as the "natural and probable consequence" of hiring or retaining someone with Bowman's alleged criminal "propensities." *Underberg*, 284 Ga. App. at 113, 643 S.E.2d at 378-79. Since CSX failed to present evidence sufficient to submit its claims to a jury, Pyramid Stone is entitled to summary judgment on the negligent hiring, training, supervision, and retention claims.

### C. Negligent Entrustment

CSX's final negligence claim against Pyramid Stone is one for negligent entrustment. Under Georgia law, a party is liable for negligent entrustment only "if [it] entrusts someone with an instrumentality, with actual knowledge that the person . . . is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness." *Carolina Cable Contractors, Inc. v. Hattaway*, 226 Ga. App. 413, 414, 487 S.E.2d 53, 54 (1997) (internal quotation marks omitted). "The owner's negligence must concur, as a part of the proximate cause, with the negligent conduct of the driver on account of his incompetency and recklessness." *Butler v. Warren*, 261 Ga. App. 375, 376, 582 S.E.2d 530, 532 (2003) (internal quotation marks omitted). Pyramid Stone asserts that it is entitled to summary judgment because CSX produced no evidence to support the essential elements of this claim.

17

Pyramid Stone first argues that CSX failed to show entrustment, negligent or otherwise, because there is no evidence that Pyramid Stone authorized Bowman to use the subject equipment on the day of the derailment. CSX counters that "[a]bundant circumstantial evidence exists . . . from which a jury may conclude otherwise." (CSX Opp'n Mem. 19.) Viewing the facts in the light most favorable to CSX, there is a genuine issue as to whether Pyramid Stone authorized Bowman to take the golf cart away from quarry property. This factual dispute is not material to the claim, however, because the golf cart did not damage the railroad tracks. *See supra* Part **II.**A. Thus, even assuming that Pyramid Stone negligently entrusted the golf cart to Bowman, such entrustment did not "concur, as a part of the proximate cause [of the injury to CSX], with the negligent conduct of [Bowman]." *Butler*, 261 Ga. App. at 376, 582 S.E.2d at 532. Since Bowman allegedly caused injury to CSX by operating the front-end loader over the tracks, the relevant question is whether Pyramid Stone negligently entrusted him with the front-end loader, not the golf cart. In that regard, CSX failed to produce any evidence from which a reasonable jury could conclude that Pyramid Stone authorized Bowman's use of the front-end loader on the day of

18

the derailment.[6]  For this reason, Pyramid Stone is entitled to summary judgment on the negligent entrustment claim.[7]

**III. Punitive Damages**

Although CSX also asserts a claim for punitive damages, this claim "has efficacy only if there is a valid claim for actual damages to which it could attach." *Barnes v. White County Bank*, 170 Ga. App.

---

[6]In order to establish its claim for negligent entrustment, CSX relies on the principle that "[e]vidence of employment with the . . . owner and prior use of a [vehicle] can raise an inference that permission was given to use the vehicle." *Thompson v. Ledbetter*, 254 Ga. App. 179, 180, 561 S.E.2d 476, 477 (2002). In *Butler v. Warren*, however, the Georgia Court of Appeals declined to apply such an inference where there was no evidence (1) that the employer "authorized [the employee] to drive the truck *off [the employer's] property*" or (2) that the employee "had used the truck in this manner prior to" the accident at issue. 261 Ga. App. at 377, 582 S.E.2d at 532 (emphasis added). In this case, as in *Butler*, there simply is no evidence that Pyramid Stone ever authorized Bowman to operate the front-end loader off Pyramid Stone property or that Bowman had ever operated the front-end loader away from the Pyramid Stone quarry prior to the day of the derailment. In the absence of such evidence, CSX cannot establish the entrustment element of its claim against Pyramid Stone.

[7]The Court also rejects CSX's argument that Pyramid Stone possessed actual knowledge that Bowman is incompetent to operate quarry machinery. First, as explained previously, there is no evidence in the record that Bowman *is* incompetent to operate quarry machinery. *See supra* Part **II.**B. Furthermore, to the extent that Bowman's criminal background renders him incompetent to operate quarry equipment, the undisputed testimony demonstrates that Bowman's employer did not have actual knowledge of the full extent of Bowman's criminal history. (*See* Rutherford Dep. 49:9-52:25, 55:19-56:23, 58:2-59:4.) That Rutherford may have discovered Bowman's background is irrelevant: "It is not sufficient . . . for a plaintiff to show constructive knowledge, i.e., that the entrustor *should have known* the person being entrusted was not competent." *Hattaway*, 226 Ga. App. at 415, 487 S.E.2d at 54 (emphasis added). Put differently, "[t]he entrustor is not liable 'merely because [he or she], by the exercise of reasonable care and diligence, could have ascertained the fact of the incompetency of the driver.'" *Id.*, 487 S.E.2d at 55 (quoting *Roebuck v. Payne*, 109 Ga. App. 525, 526, 136 S.E.2d 399, 401 (1964)); *accord Upshaw v. Roberts Timber Co., Inc.*, 266 Ga. App. 135, 137-39, 596 S.E.2d 679, 682-83 (2004) (finding no actual knowledge of incompetence where employer provided company vehicle without investigating the employee's driving history).

681, 681, 318 S.E.2d 74, 75-76 (1984). Since CSX failed to create a genuine issue of material fact on any claim against Pyramid Stone which might give rise to compensatory damages, it cannot recover punitive damages and Pyramid Stone is entitled to summary judgment on this claim. *See J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 561, 644 S.E.2d 440, 449 (2007) (noting that punitive damages "are not recoverable [where a plaintiff's] substantive claims have failed" and that "[p]unitive damages may not be recovered where there is no entitlement to compensatory damages" (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant Pyramid Stone Industries, Inc.'s Motion for Summary Judgment (Doc. 38). The Court further finds that no just reason exists for delaying the entry of final judgment in favor of Defendant Pyramid Stone Industries, Inc., and therefore, the Court directs the Clerk to enter final judgment in favor of Defendant Pyramid Stone Industries, Inc. pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED, this 9th day of April, 2008.

                                                             S/Clay D. Land
                                                                CLAY D. LAND
                                         UNITED STATES DISTRICT JUDGE